```
1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
2                          WACO DIVISION

3   ARCIMOTO, INC.           ) Docket No. WA 20-CA-176 ADA
                             )
4   vs.                      ) Waco, Texas
                             )
5   AYRO,INC.                ) October 15, 2020

6
          TRANSCRIPT OF VIDEOCONFERENCE MARKMAN HEARING
7            BEFORE THE HONORABLE ALAN D. ALBRIGHT

8   APPEARANCES:

9   For the Plaintiff:       Ms. Renee E. Rothauge
                             Perkins Coie, LLP
10                           1120 N.W. Couch Street,
                             Tenth Floor
11                           Portland, Oregon 97209

12                           Mr. Shyamkrishna Palaiyanur
                             Mr. Jose C. Villarreal
13                           Perkins Coie, LLP
                             500 West 2nd Street, Suite 1900
14                           Austin, Texas 78701

15  For the Defendant:       Ms. Robyn M. Bowland
                             Mr. John M. Schafer
16                           Akerman, LLP
                             71 South Wacker Drive,
17                           47th Floor
                             Chicago, Illinois 60606
18
                             Mr. Ryan T. Beard
19                           Akerman, LLP
                             500 West 2nd Street, 19th Floor
20                           Austin, Texas 78701

21  Court Reporter:          Ms. Lily Iva Reznik, CRR, RMR
                             501 West 5th Street, Suite 4153
22                           Austin, Texas 78701
                             (512)391-8792
23

24

25  Proceedings reported by computerized stenography,
    transcript produced by computer-aided transcription.
```

| | | |
|---|---|---|
| 13:38:25 | 1 | THE CLERK:  Markman hearing in Civil Action |
| 13:38:25 | 2 | W-20-CV-176, styled, <u>Arcimoto, Incorporated vs. Ayro,</u> |
| 13:38:30 | 3 | <u>Incorporated</u>. |
| 13:38:31 | 4 | THE COURT:  If I could have announcements from |
| 13:38:32 | 5 | counsel, starting with the plaintiff.  I see Mr. |
| 13:38:36 | 6 | Villarreal, I'm assuming he's here for the plaintiff.  If |
| 13:38:38 | 7 | you would make announcement and then, I'll hear from the |
| 13:38:40 | 8 | defendant. |
| 13:38:44 | 9 | MR. VILLARREAL:  Thank you, your Honor. |
| 13:38:45 | 10 | Yes.  This is Jose Villarreal for Plaintiff |
| 13:38:49 | 11 | Arcimoto.  I'm with the firm Perkins Coie.  And with me, I |
| 13:38:52 | 12 | have Shyam Palaiyanur and Renee Rothauge, both from |
| 13:38:54 | 13 | Perkins Coie.  I'd also like to tell the Court that there |
| 13:38:57 | 14 | are two client representatives here today, Mr. Mark |
| 13:39:01 | 15 | Frohnmayer and Mr. John Dorbin. |
| 13:39:03 | 16 | THE COURT:  Well, Mr. Frohnmayer has a great |
| 13:39:06 | 17 | photo up on his screen here.  So great photo with a dog. |
| 13:39:10 | 18 | You can't do any better than that. |
| 13:39:12 | 19 | So -- and for defendants?  For defendants, going |
| 13:39:28 | 20 | once. |
| 13:39:30 | 21 | MR. BEARD:  Thank you, your Honor. |
| 13:39:31 | 22 | This is Ryan Beard from Akerman.  I also have |
| 13:39:34 | 23 | with me Ms. Bowland and Mr. Schafer, all for Ayro.  And |
| 13:39:37 | 24 | we're working on it.  It's hard to hear you on our system |
| 13:39:40 | 25 | for some reason. |

| | | |
|---|---|---|
| 13:39:41 | 1 | THE COURT:  Oh, okay. |
| 13:39:42 | 2 | MR. BEARD:  So if we have to tell you we can't |
| 13:39:44 | 3 | hear you, we apologize. |
| 13:39:46 | 4 | THE COURT:  No, no.  So let me do this. |
| 13:39:48 | 5 | Suzanne, can you check and see if the same thing |
| 13:39:50 | 6 | on your end, and if it's not, I'll dial back in and see if |
| 13:39:55 | 7 | that helps. |
| 13:40:10 | 8 | THE CLERK:  Judge, everything looks okay as far |
| 13:40:12 | 9 | as I can tell.  I can hear you fine.  So. |
| 13:40:15 | 10 | THE COURT:  Mr. Beard, can you not hear me? |
| 13:40:21 | 11 | Apparently not.  Okay.  I'll tell you what.  I'm going to |
| 13:40:24 | 12 | -- I'm going to leave, if I can figure out how to do that, |
| 13:40:27 | 13 | and then, I will -- I'll pop back in, maybe we'll see if |
| 13:40:30 | 14 | that helps. |
| 13:41:02 | 15 | Try again, Mr. Beard.  Did that help? |
| 13:41:05 | 16 | MR. BEARD:  It's very faint, your Honor.  We can |
| 13:41:06 | 17 | hear you, it's just sometimes a little more difficult.  So |
| 13:41:10 | 18 | we'll try to -- we're thinking about dialing in so we can |
| 13:41:12 | 19 | get you on audio on the phone. |
| 13:41:14 | 20 | THE COURT:  Okay. |
| 13:41:18 | 21 | MR. BEARD:  We can proceed while we do that. |
| 13:41:20 | 22 | THE COURT:  Okay.  Very good. |
| 13:41:21 | 23 | It's my understanding that there are two claim |
| 13:41:25 | 24 | terms that the parties would like to actually discuss at |
| 13:41:30 | 25 | the hearing today, after having received the Court's |

13:41:33 1    preliminary constructions, and those two claim terms are,
13:41:37 2    number one, "motor" and, number two, "a three-wheeled
13:41:41 3    vehicle, comprising."  With regard to the second one, the
13:41:45 4    question about -- will be whether or not the preamble is
13:41:50 5    limiting.
13:41:52 6         And so, why don't we take up "motor" first.  The
13:41:58 7    Court gave it its plain and ordinary meaning.  It's my
13:42:03 8    understanding that the plaintiff would like to add a
13:42:07 9    modification to what plain and ordinary meaning is.
13:42:11 10        Mr. Villarreal, will you be handling this or
13:42:14 11   someone else on your team?
13:42:16 12        MR. VILLARREAL:  Your Honor, I'll be handling it.
13:42:18 13        THE COURT:  Okay.
13:42:19 14        MR. VILLARREAL:  Thank you, your Honor.
13:42:20 15        And if I may share the screen with some slides.
13:42:47 16   I trust that the slides are showing on the screen.
13:42:50 17        THE COURT:  They are.  Yes, sir.  I'm going to
13:42:53 18   mute myself.  But yes, they are.
13:42:55 19        MR. VILLARREAL:  Thank you, your Honor.
13:42:56 20        So yes, your Honor.  So the Court has given a
13:42:59 21   preliminary construction of "motor" as the plain and
13:43:02 22   ordinary meaning, and Arcimoto agrees with this, however,
13:43:07 23   we think it's important to add a point of clarification
13:43:09 24   that the plain and ordinary meaning does not include an
13:43:13 25   internal combustion engine; and the reason for this is

13:43:17 1  that a person of skill in the art would not understand

13:43:20 2  that a motor includes an internal combustion engine, and

13:43:24 3  not providing this clarification would cause confusion to

13:43:26 4  the jury.

13:43:27 5         Your Honor, Arcimoto identified the field of art

13:43:32 6  in its briefing, which is energy efficient vehicle system

13:43:38 7  design.  We also identified the level of skill in the art.

13:43:41 8  And we looked at the -- at motor with the perspective of

13:43:46 9  the person of ordinary skill in the art.  Now, in

13:43:50 10 contrast, Ayro through its briefing never mentioned once

13:43:53 11 what the field of art was or what the level of skill in

13:43:56 12 the art was.  But looking at the intrinsic evidence, your

13:44:00 13 Honor, we feel that it amply supports this additional

13:44:04 14 clarification to the "motor" term.

13:44:07 15        As an example, the title of the patent is an

13:44:10 16 ultra efficient three-wheeled electric vehicle.  Moreover,

13:44:15 17 the field of the invention, again, consistent with our

13:44:18 18 proposed field, concerns an ultra efficient vehicle,

13:44:23 19 particularly a three-wheeled electric vehicle.  And your

13:44:28 20 Honor, if I may point to you the discussion of the

13:44:31 21 background, I think that is very, very useful in

13:44:35 22 understanding this because here, the patent makes a

13:44:39 23 contrast between the invention and the traditional

13:44:44 24 vehicles which it stated that have a higher energy and a

13:44:50 25 higher environmental footprint.

| | | |
|---|---|---|
| 13:44:52 | 1 | So the patent states that there's an increased |
| 13:44:55 | 2 | demand in recent years for efficient vehicles that carry a |
| 13:44:59 | 3 | lesser energy and lesser environmental footprint than |
| 13:45:03 | 4 | traditional automobiles.  And what is a traditional |
| 13:45:07 | 5 | automobile?  It's one with an internal combustion engine |
| 13:45:11 | 6 | that's going to have a larger environmental footprint. |
| 13:45:14 | 7 | That is not what the invention is about. |
| 13:45:18 | 8 | Another point to consider, your Honor, another |
| 13:45:20 | 9 | point of the intrinsic evidence that supports this |
| 13:45:24 | 10 | additional clarification is that nowhere within any of the |
| 13:45:29 | 11 | descriptions in the patent or in the claims is there any |
| 13:45:33 | 12 | explanation or recitation of the components that would be |
| 13:45:37 | 13 | normally found in a vehicle with an internal combustion |
| 13:45:43 | 14 | engine.  And what I'm talking about are things such as a |
| 13:45:45 | 15 | gas tank, or a fuel tank, or a radiator, an exhaust, or |
| 13:45:50 | 16 | timing belts.  These things are completely absent from the |
| 13:45:53 | 17 | patent because the patent discusses a vehicle that runs on |
| 13:45:58 | 18 | a motor, and a motor is not a internal combustion engine. |
| 13:46:04 | 19 | I'd like to also point to claim No. 1.  If we |
| 13:46:09 | 20 | look at claim No. 1, which is not the asserted claim, if |
| 13:46:13 | 21 | we look at that claim and we look at the second to last |
| 13:46:18 | 22 | limitation, it claims the energy storage device coupled to |
| 13:46:23 | 23 | the motor for driving the motor.  This is important |
| 13:46:28 | 24 | because the energy storage device as discussed in the |
| 13:46:32 | 25 | specification is either a battery or a fuel cell.  And |

13:46:37  1  here, we have the energy storage device coupled to the

13:46:41  2  motor for driving the motor.  It does not say a fuel tank

13:46:44  3  or a gas tank.  So this makes it clear that the motor that

13:46:48  4  we are talking about does not include an internal

13:46:53  5  combustion engine.

13:46:54  6      And, your Honor, Ayro admitted this in its

13:46:59  7  briefing.  Ayro explained that claim 1 recites an energy

13:47:05  8  storage device coupled to the motor for driving the motor

13:47:08  9  and made the point, and I quote by saying, thus, the

13:47:12  10  applicants knew how to draft a claim limited to one

13:47:16  11  electrical motor.  So in their view of claim 1 was

13:47:19  12  referring to an electrical motor with just the word

13:47:24  13  "motor."

13:47:25  14      Now, what's important about this is, your Honor,

13:47:28  15  that a claim should be construed in the same way across

13:47:32  16  different -- I mean, a term should be construed the same

13:47:37  17  way across different claims in the same patent.

13:47:40  18      As an example, we have the PODS vs. Porta Stor

13:47:44  19  case from the Federal Circuit where the district construed

13:47:47  20  the term "carrier frame" differently in claim 29 from

13:47:52  21  claim No. 1, and the Federal Circuit reversed and the

13:47:58  22  reason for this is that there's a presumption that the

13:48:00  23  term in different claims is going to have the same

13:48:02  24  meaning.

13:48:03  25      And that's exactly the situation that we have

13:48:05  1  here today.  The motor in claim 1 is going to have the

13:48:09  2  same meaning as the motor in claim 10, and that motor does

13:48:13  3  not include an internal combustion engine.  And there is

13:48:17  4  really no evidence that suggests that it should be

13:48:20  5  construed differently in the different claim -- across

13:48:23  6  both claims.

13:48:25  7        Lastly, your Honor, I'd like to point to

13:48:30  8  extrinsic evidence, and I know that carries much lesser

13:48:32  9  weight.  But the important point of this definition from

13:48:35  10  the Motor Era Dictionary of Automotive Terms is that it

13:48:40  11  brings home the point that a motor is an electrically

13:48:45  12  driven power unit in that the term is often incorrectly,

13:48:48  13  but commonly, applied to an internal combustion engine.

13:48:54  14        So what we have here, your Honor, is that maybe

13:48:56  15  for a layperson, a layperson would say, well, a motor

13:49:00  16  includes an engine, but that's not what we're talking

13:49:02  17  about here, your Honor.  To construe a claim, you have to

13:49:06  18  look at the claim, the claim term from the perspective of

13:49:09  19  a person of ordinary skill in the art, and such a person

13:49:14  20  would recognize that a motor does not include an internal

13:49:19  21  combustion engine.

13:49:20  22        And we submit, your Honor, that this is a very

13:49:22  23  important distinction that should be provided to the jury.

13:49:26  24  Thank you, your Honor.  Your Honor, I think I lost your

13:49:38  25  audio.

| | | |
|---|---|---|
| 13:49:42 | 1 | THE COURT:  Mr. Beard, are you going to handle |
| 13:49:44 | 2 | the response?  Mr. Beard, you're on mute, I think. |
| 13:49:56 | 3 | MR. BEARD:  Sorry, your Honor.  We fixed the |
| 13:49:57 | 4 | audio issue, by the way. |
| 13:49:57 | 5 | THE COURT:  Good. |
| 13:50:00 | 6 | MR. BEARD:  I have Jay Schafer here from my |
| 13:50:01 | 7 | office.  Mr. Schafer, excellent attorney, but this is his |
| 13:50:04 | 8 | first Markman, and I'm bringing that up because I know |
| 13:50:07 | 9 | from some conferences that you've had, you've noted that |
| 13:50:10 | 10 | it's good for attorneys to get their feet wet in these |
| 13:50:13 | 11 | situations and to have a Markman before the Court.  He's |
| 13:50:16 | 12 | going to handle the arguments for us today. |
| 13:50:18 | 13 | THE COURT:  Well, I think that's wonderful.  I |
| 13:50:20 | 14 | hope you've warned him how awful I can be to people who |
| 13:50:24 | 15 | are appearing in front of me and you've given him that |
| 13:50:28 | 16 | warning. |
| 13:50:31 | 17 | MR. BEARD:  Yes, I have. |
| 13:50:32 | 18 | THE COURT:  I've learned a little bit over my two |
| 13:50:34 | 19 | years at one of early Markmans, some poor young attorney |
| 13:50:41 | 20 | got up to argue something, and I thought I was joking.  I |
| 13:50:45 | 21 | was joking, but I said they must really hate you if |
| 13:50:48 | 22 | they've given you this claim term, and I think I almost |
| 13:50:54 | 23 | gave the person a heart attack.  So I don't say that much |
| 13:50:58 | 24 | anymore. |
| 13:50:58 | 25 | But I certainly look forward to hearing someone |

13:51:02  1   doing their first argument in front of me.  I think that's

13:51:05  2   terrific.

13:51:06  3          MR. SCHAFER:  Thank you, your Honor.  My name is

13:51:08  4   Jay Schafer, as Mr. Beard said, and I'm just pulling up

13:51:13  5   the slides.

13:51:13  6          THE COURT:  Look, you even wore a bowtie.  I

13:51:16  7   think that's -- see, look --

13:51:19  8          MR. SCHAFER:  Good decision.

13:51:19  9          THE COURT:  -- you're already years ahead.  So.

13:51:24  10         MR. SCHAFER:  All right.  Just trying to get the

13:51:26  11  screen to share here.  Do you see the slides, your Honor?

13:51:57  12         THE COURT:  Yes, sir.

13:51:58  13         MR. SCHAFER:  All right.  Thank you, sir.

13:52:01  14         So, your Honor, to begin with, the issue that

13:52:09  15  Arcimoto is bringing up for the Court today with respect

13:52:11  16  to the construction of "motor" is nothing that hasn't been

13:52:15  17  presented in the briefing.  As slide 3 here shows, in each

13:52:22  18  of the three briefs, Arcimoto presented this exact

13:52:28  19  argument that the internal -- or the term "motor" cannot

13:52:33  20  include an internal combustion engine and, you know, the

13:52:37  21  various different machinations that they have presented

13:52:43  22  that argument.  So again, this is nothing that you haven't

13:52:46  23  already had presented before you.

13:52:52  24         If we go to the next page, you know, looking at

13:52:57  25  the extrinsic evidence, and Mr. Villarreal addressed this,

| | | |
|---|---|---|
| 13:53:04 | 1 | but I think it's important to note a couple distinctions |
| 13:53:07 | 2 | between claim 1 and claim 10.  In claim 1, the -- there's |
| 13:53:13 | 3 | limitations that are not found in claim 10.  You have an |
| 13:53:16 | 4 | energy storage device specifically being coupled to the |
| 13:53:20 | 5 | motor to drive the motor. |
| 13:53:22 | 6 | In claim 10, the motor is a separate entity. |
| 13:53:26 | 7 | There's a different term, a battery that is only given in |
| 13:53:31 | 8 | relation to -- or only described in relationship to the |
| 13:53:35 | 9 | position of the components in the vehicle.  So this is |
| 13:53:39 | 10 | a -- again, a different form of language that the |
| 13:53:46 | 11 | inventors chose, and if they had intended to have it |
| 13:53:52 | 12 | exactly the same as in claim 1, they obviously knew how to |
| 13:53:56 | 13 | do that. |
| 13:53:57 | 14 | Also, the -- a note that's not here on the slide |
| 13:54:03 | 15 | is that the preamble of claim 1 is a three-wheeled |
| 13:54:06 | 16 | vehicle, comprising, and then, it lists the individual |
| 13:54:10 | 17 | terms.  It's not, you know, stating that this is limited |
| 13:54:14 | 18 | to the specific, you know, invention described and that it |
| 13:54:20 | 19 | is in some way, you know, disclaiming other types of |
| 13:54:26 | 20 | components or vehicles.  And, you know, the claim in the |
| 13:54:31 | 21 | patent make no mention of brakes, but I have a pretty good |
| 13:54:35 | 22 | suspicion that any three-wheeled vehicle is going to have |
| 13:54:38 | 23 | some form of braking. |
| 13:54:40 | 24 | So again, we can't just say that the absence of a |
| 13:54:44 | 25 | particular description of components precludes him from |

13:54:49  1  being in -- within the scope of particular claim terms.

13:54:55  2  And then, just looking at the permissive language that's

13:54:58  3  used in the 255 patent, the propulsion system is

13:55:03  4  preferably comprised of an electric motor.  It's repeated

13:55:07  5  twice in two different parts.  And the inventors used the

13:55:11  6  qualifier or the adjective electric to describe the motor.

13:55:15  7  That adjective is not in the claims.

13:55:21  8          And then, finally, the -- for this particular

13:55:25  9  point, the -- I've forgotten what my next particular point

13:55:36  10  was, so we'll move on to the next slide.  Just flipping

13:55:40  11  quickly through the extrinsic evidence that --

13:55:42  12          THE COURT:  Mr. Schafer, could I ask you a

13:55:44  13  question?

13:55:45  14          MR. SCHAFER:  Oh, yes, sir.

13:55:46  15          THE COURT:  Is it your client's position that the

13:55:54  16  plaintiff is wrong and that the plain and ordinary meaning

13:55:57  17  of motor is not a machine that converts power from one

13:56:01  18  form to another to propel a vehicle?

13:56:06  19          MR. SCHAFER:  That would be consistent, your

13:56:09  20  Honor, with our client's understanding of what a motor is.

13:56:12  21  Yes.  That is the plain and ordinary meaning.  It's just

13:56:16  22  not limited to a particular type of vehicle.  Is not

13:56:20  23  limited -- I'm sorry, particular type of conversion.  It

13:56:26  24  does not have to be --

13:56:28  25          THE COURT:  Well, let me break that down just a

| | |
|---|---|
| 13:56:32 | 1 |
| 13:56:36 | 2 |
| 13:56:41 | 3 |
| 13:56:44 | 4 |
| 13:56:48 | 5 |
| 13:56:53 | 6 |
| 13:56:55 | 7 |
| 13:56:59 | 8 |
| 13:57:04 | 9 |
| 13:57:09 | 10 |
| 13:57:14 | 11 |
| 13:57:19 | 12 |
| 13:57:23 | 13 |
| 13:57:32 | 14 |
| 13:57:35 | 15 |
| 13:57:36 | 16 |
| 13:57:40 | 17 |
| 13:57:44 | 18 |
| 13:57:47 | 19 |
| 13:57:51 | 20 |
| 13:57:56 | 21 |
| 13:58:02 | 22 |
| 13:58:06 | 23 |
| 13:58:10 | 24 |
| 13:58:14 | 25 |

little bit, and what I mean by that is, would one skilled in the art reading claims 1 or 10 believe that the plain and ordinary meaning of motor in either those claim terms -- and I'm -- obviously the dependent claims, I get.  But is it your position -- your legal position that the plain and ordinary meaning of motor in either of those claims is not a machine that converts power from one form to another to propel the vehicle?

MR. SCHAFER:  It depends, I guess, to the extent, your Honor, of what power means to convert power from one form to another.  I think a person of ordinary skill in the art would understand that a motor does convert from one -- energy from one form to another, and they can be a variety of different inputs and the output would be the rotation of a shaft.

THE COURT:  I mean, a motor is not going to work if it doesn't convert your word "energy," their word "power," whatever, fuel, whatever you want to say, a machine doesn't work unless it converts power from one form -- maybe it's a gas that's being burned.  Maybe it's a battery that's supplying electricity.  Maybe it's a rubber band that's, you know, on the little planes we used to fly where you twist the rubber band.  But the motor has to convert power from -- or energy or something from one form to another to pro -- in this case, the motor's being

13:58:17  1  used to propel a vehicle.

13:58:19  2         But I'm not sure why you're unhappy with that

13:58:25  3  being -- I'm not sure why exactly the plaintiff wants me

13:58:31  4  to add that, but I'm also not sure why your -- why the

13:58:37  5  defendant is opposed to it because, it seems to me, one

13:58:43  6  skilled in the art would agree that the motor that's

13:58:46  7  claimed in claims 1 and 10 is certainly a machine, machine

13:58:50  8  being -- I guess we could fuss over whether that's the

13:58:53  9  correct word, but it seems to be pretty close.  Seems to

13:58:58  10  be a machine that converts power from one form to another

13:59:01  11  to propel a vehicle.  In this case, that's what it's

13:59:03  12  doing.

13:59:03  13         How is that not the plain and ordinary meaning?

13:59:06  14  I worry why the plaintiff wants it and I worry why you

13:59:10  15  don't.

13:59:13  16         MR. SCHAFER:  Well, we do think that it's the

13:59:14  17  plain and ordinary meaning, and that's not really where

13:59:16  18  the dispute lies, your Honor.  I agree completely with

13:59:20  19  what you -- how you characterize what a person of ordinary

13:59:24  20  skill in the art would understand with respect to the word

13:59:28  21  "motor" in both claims 1 and 10.  I think the plaintiff's

13:59:34  22  position is to limit the scope of motor and what a person

13:59:39  23  of ordinary skill would understand to exclude a certain

13:59:43  24  type of motor or certain type of power conversion from one

13:59:48  25  form to another, if you will.

13:59:50  1        THE COURT:  What motor for a vehicle is able to

13:59:58  2   move -- is able to propel the vehicle unless it converts

14:00:03  3   something from one form to another to create energy?  Is

14:00:07  4   there a motor out there that can do that?

14:00:12  5        MR. SCHAFER:  I am not aware of one that can do

14:00:14  6   that.  It does not --

14:00:16  7        THE COURT:  Again, let me tell you why I'm

14:00:17  8   thinking of adding this in its -- I didn't think it needed

14:00:22  9   the added one that we called in, but because, like I said,

14:00:27  10  I worried why the plaintiff would want it.  But I can't --

14:00:32  11  I fear that if I don't include it, even though I think

14:00:36  12  this is the plain and ordinary meaning of what a motor is

14:00:39  13  and I don't think you've argued very vigorously against

14:00:43  14  that, I feel like maybe I need to include it to make sure

14:00:47  15  the defendant doesn't say this is wrong if the plaintiff

14:00:50  16  takes this position because I think that is the plain and

14:00:54  17  ordinary meaning.

14:00:55  18        And I would -- I just got through a trial and,

14:00:57  19  I'll tell you, we had a huge fight because there was a

14:01:03  20  claim term that we had plain and ordinary meaning, and

14:01:06  21  then, there was a huge fight over whether or not the --

14:01:12  22  one of the elements in the Roku product actually was or

14:01:17  23  wasn't that in terms of plain and ordinary meaning.

14:01:20  24        And I -- I don't know that this adds anything,

14:01:25  25  but I know that I can picture now if I'm reading the claim

14:01:29  1   terms to the jury, which I do, and attach them with the

14:01:32  2   verdict, which I do, I think the plaintiff is correct that

14:01:39  3   a plain and ordinary meaning of motor is a machine that

14:01:42  4   converts power from one form to another to propel a

14:01:45  5   vehicle.

14:01:46  6        If the defendant is not going to argue that

14:01:50  7   that's wrong, I might not include it.  But if the

14:01:54  8   plaintiff's going to take the position that a motor -- I'm

14:01:59  9   sorry.  If the defendant is going to take the position for

14:02:03  10  infringement or validity that the element of claim 1 or 10

14:02:09  11  includes a motor is not a machine that converts power from

14:02:12  12  one form to another to propel a vehicle, then I think I

14:02:15  13  would include it.

14:02:19  14       MR. BEARD:  Your Honor, if I may, this is Ryan

14:02:21  15  Beard.

14:02:21  16       THE COURT:  Yes.

14:02:22  17       MR. BEARD:  The issue before the Court is whether

14:02:24  18  or not motor or the term that the plaintiff has proposed,

14:02:26  19  whether or not that includes or excludes an internal

14:02:30  20  combustion engine.  It's our position that the term

14:02:33  21  "motor" at its plain and ordinary meaning, and we agree

14:02:37  22  with the construction that the plaintiff has proposed, the

14:02:40  23  definition that he says plain and ordinary meaning.

14:02:42  24  However, our concern is that if you adopt the plaintiff's

14:02:45  25  construction, they're going to take the position that an

| | | |
|---|---|---|
| 14:02:48 | 1 | internal combustion engine does not fall within the scope |
| 14:02:52 | 2 | of the claims, and that's the issue for the Court. |
| 14:02:54 | 3 | So it's not the words that they're using, it's |
| 14:02:56 | 4 | the meaning that they have put behind those words.  And |
| 14:03:00 | 5 | that issue is what we've argued about in the briefing. |
| 14:03:03 | 6 | This is, again, nothing new.  This is -- all of the |
| 14:03:06 | 7 | argument you've seen from the plaintiff has been made in |
| 14:03:10 | 8 | the briefing, and that's really the issue for the Court. |
| 14:03:14 | 9 | It's not whether or not their words are correct or our |
| 14:03:16 | 10 | words are correct.  It's whether or not internal |
| 14:03:18 | 11 | combustion engines is a motor or not. |
| 14:03:21 | 12 | THE COURT:  Okay.  I'm going to put you on hold |
| 14:03:23 | 13 | for a second and talk to Josh because I don't want to |
| 14:03:28 | 14 | leave here pretending that we don't know what the elephant |
| 14:03:33 | 15 | is in the room then.  So let me go talk to Josh. |
| 14:03:39 | 16 | MR. VILLARREAL:  Your Honor. |
| 14:03:40 | 17 | THE COURT:  Yes, sir. |
| 14:03:40 | 18 | MR. VILLARREAL:  May I answer? |
| 14:03:41 | 19 | THE COURT:  Oh, well, go ahead.  Go ahead. |
| 14:03:45 | 20 | What I'm thinking about doing is taking this |
| 14:03:48 | 21 | issue up very early in the case if we need to. |
| 14:03:53 | 22 | But, Mr. Villarreal, you're certainly welcome to |
| 14:03:56 | 23 | say whatever you'd like. |
| 14:03:57 | 24 | MR. VILLARREAL:  Thank you, your Honor. |
| 14:03:57 | 25 | Just very narrow as to your question about the |

14:04:01    1    motor and the internal combustion engine issue, so we
14:04:06    2    agree, your Honor, our construction of a motor is the
14:04:12    3    plain and ordinary meaning.  The issue is that we require
14:04:17    4    additional clarification that it does not include an
14:04:19    5    internal combustion engine for the simple question -- I
14:04:22    6    can answer what you asked.  And we have this in our brief,
14:04:25    7    your Honor.
14:04:25    8         The internal combustion engine converts chemical
14:04:32    9    -- a chemical fuel source, which is gasoline, into
14:04:36   10    mechanical power, and it performs a chemical reaction to
14:04:39   11    do so.  This is not what a motor does.  A motor transforms
14:04:45   12    some sort of power, such as electrical power, into
14:04:50   13    mechanical paperwork, in this case, to propel the vehicle.
14:04:53   14    So it's a power conversion.  An engine is a different type
14:04:57   15    of device that requires a chemical reaction that will then
14:05:02   16    create some sort of energy.
14:05:05   17         So that's why an engine, it's just -- it looks
14:05:11   18    different.  It has different components such as a
14:05:15   19    radiator, exhaust, and so on.  It's a different thing that
14:05:17   20    would not be included within the scope of a motor from the
14:05:21   21    view of a person of ordinary skill in this art.  And I
14:05:27   22    will admit to your Honor, a layperson, for a layperson, I
14:05:31   23    have heard it out in the street that a motor is an engine,
14:05:34   24    but that is not what we are talking about here, your
14:05:37   25    Honor.  We're talking about how one of ordinary skill in

14:05:40  1  the art would interpret this term in view of the intrinsic

14:05:44  2  evidence.

14:05:45  3       THE COURT:  Well, I have to tell you that, you

14:05:50  4  know, there are a lot of times when I'm dealing with

14:05:55  5  source code, or hardware, or biology, or something where I

14:06:05  6  think we care what one skilled in the art would think.  I

14:06:09  7  think the word "motor" is going to be one that an awful

14:06:11  8  lot of people -- an awful lot of people are going to feel

14:06:17  9  like they know what the word means.

14:06:20  10       And so, here's what I'm going to do.  I am going

14:06:30  11  to include the construction the plain and ordinary meaning

14:06:35  12  of motor is a machine that converts power from one form to

14:06:37  13  another to propel a vehicle.  Is that -- that's just a

14:06:42  14  statement that I think is correct.

14:06:46  15       If the plaintiff takes a position with regard to

14:06:51  16  the inclusion or exclusion of any kind of engine, I won't

14:07:00  17  say -- I won't be even more specific than that.  If the

14:07:02  18  plaintiff takes a position that the defendant thinks with

14:07:05  19  regard to what is or is not a motor in this case, then

14:07:11  20  what we need to do is, at that time, when the plaintiff

14:07:17  21  prepares their expert report, then you exchange it, or the

14:07:20  22  defendant prepares their validity report, and if there is

14:07:25  23  a fight over the fight that we're having here where does

14:07:30  24  the plain and ordinary meaning of motor include either

14:07:35  25  what the plaintiff is claiming it includes or the

| | | |
|---|---|---|
| 14:07:38 | 1 | plaintiff is claiming it excludes, whatever that is, where |
| 14:07:43 | 2 | I need -- that's not a question of fact for the jury, but |
| 14:07:46 | 3 | that's a question of law for me, then once you get those |
| 14:07:51 | 4 | expert reports, whoever is unhappy about the position the |
| 14:07:55 | 5 | other side is taking, contact me and we will set up -- |
| 14:08:01 | 6 | I'll look at how it's being used by the parties, and if we |
| 14:08:05 | 7 | need to, we'll have another mini Markman at that time, and |
| 14:08:09 | 8 | I'll determine -- I'll determine whether or not one side |
| 14:08:13 | 9 | or the other's construction is correct. |
| 14:08:17 | 10 | So you guys have given -- spotted for me what the |
| 14:08:21 | 11 | issue's going to be.  Obviously if one side or the other |
| 14:08:27 | 12 | decides to take an over -- what might be an overly |
| 14:08:32 | 13 | aggressive position either with respect to infringement or |
| 14:08:35 | 14 | non-infringement, validity, invalidity, the price they may |
| 14:08:40 | 15 | pay is if I have that mini Markman, their construction use |
| 14:08:47 | 16 | and how they -- I forgot how their experts say may get |
| 14:08:52 | 17 | struck at that point, which would not be a good point to |
| 14:08:55 | 18 | have it struck at. |
| 14:08:55 | 19 | So I'm going to make the final claim construction |
| 14:09:00 | 20 | for "motor" plain and ordinary meaning.  The plain and |
| 14:09:04 | 21 | ordinary meaning of motor is a machine that converts power |
| 14:09:06 | 22 | from one form to another to propel a vehicle. |
| 14:09:11 | 23 | With respect -- let's move, then, to "a |
| 14:09:15 | 24 | three-wheeled vehicle, comprising."  The argument is |
| 14:09:19 | 25 | essentially that the preamble is limiting or not.  I will |

14:09:25   1   tell you that this morning, my law clerks and I had a

14:09:30   2   robust 45-minute discussion on this issue, and there is

14:09:34   3   not consensus within the chambers.

14:09:38   4          And so, right now, it's a jump fall.  I'm happy

14:09:43   5   to hear from both sides.  Whoever wants to -- I'll go --

14:09:49   6   I'll allow the plaintiff to go first and argue why they

14:09:52   7   believe the preamble is limiting, then I'll hear from

14:09:55   8   defendants as to why they think it's nonlimiting, and

14:09:59   9   then, we'll go from there.  So whoever's going to argue

14:10:02  10   this for the plaintiff, I invite you to do so now.

14:10:04  11          MR. VILLARREAL:  Thank you, your Honor.  This is

14:10:05  12   Jose Villarreal.

14:10:07  13          Mr. Shyam Palaiyanur, an associate at my firm, is

14:10:11  14   going to address the preamble limitation.

14:10:14  15          THE COURT:  Two associates in one hearing.  This

14:10:17  16   is wonderful for me.  I'm glad we're able to do this.

14:10:24  17          MR. PALAIYANUR:  May it please the Court, Shyam

14:10:27  18   Palaiyanur on behalf of Plaintiff Arcimoto.

14:10:28  19          Can you see my slides, your Honor?

14:10:29  20          THE COURT:  Yes, sir, I can.

14:10:30  21          MR. PALAIYANUR:  Great.  I will be arguing the

14:10:34  22   claim term, "a three-wheeled vehicle, comprising."  This

14:10:38  23   is the preamble for claim 10.

14:10:44  24          Your Honor, the Court issued its preliminary

14:10:47  25   construction, which is the preamble is nonlimiting, and I

14:10:50  1    just want to bring the Court's attention to one specific

14:10:55  2    case.  So I will keep my argument short, your Honor.

14:10:58  3              THE COURT:  Okay.

14:10:59  4              MR. PALAIYANUR:  We believe that this Federal

14:11:01  5    Circuit authority is directly on point, and the Federal

14:11:05  6    Circuit in that case reversed a lower court ruling that

14:11:08  7    the preamble was nonlimiting.  The case, your Honor, is In

14:11:15  8    Re: Fought, and in that case, the preamble was a travel

14:11:18  9    trailer, and there were two considerations that the

14:11:20  10   Federal Circuit made.

14:11:21  11             First, the Federal Circuit found the preamble was

14:11:26  12   limiting because it served antecedent basis.  And the

14:11:29  13   second consideration, your Honor, was the Federal Circuit

14:11:33  14   found that a travel trailer was a specific type of

14:11:37  15   recreational vehicle.  Now, based on these two

14:11:40  16   considerations, the Federal Circuit found that the

14:11:43  17   preamble "a travel trailer" was limiting.

14:11:48  18             Your Honor, these two considerations apply

14:11:51  19   directly to our case.  And on slide 13, I have claim 10,

14:11:56  20   which shows that the preamble "three-wheeled vehicle"

14:12:01  21   serve as antecedent basis to the term "the vehicle," which

14:12:04  22   is used six times in the body of the claims.  The second

14:12:09  23   point, your Honor, is that a three-wheeled vehicle is a

14:12:12  24   specific type of vehicle, a specific structure for a

14:12:17  25   vehicle, and we know that because in the patent, it calls

| | | |
|--|--|--|
| 14:12:21 | 1 | it out as a three-wheeled electric vehicle. |
| 14:12:24 | 2 | And also, in the field of the invention, the |
| 14:12:26 | 3 | invention -- the invention is directed to particularly a |
| 14:12:32 | 4 | three-wheeled electric vehicle.  And, your Honor, a |
| 14:12:38 | 5 | three-wheeled vehicle is a vehicle with exactly three |
| 14:12:40 | 6 | wheels.  It does not include four wheels, it does not |
| 14:12:44 | 7 | include five wheels; it includes exactly three wheels. |
| 14:12:48 | 8 | Every single embodiment in this patent has exactly three |
| 14:12:52 | 9 | wheels.  And so, that's a particular structure. |
| 14:12:58 | 10 | Now, what Ayro is trying to do, your Honor, is to |
| 14:13:02 | 11 | bring in prior art that has a vehicle with four wheels. |
| 14:13:07 | 12 | Well, that is a different structure, your Honor.  And the |
| 14:13:09 | 13 | Federal Circuit case of In Re: Fought tells us that that's |
| 14:13:12 | 14 | a different structure.  And that's my argument, your |
| 14:13:16 | 15 | Honor. |
| 14:13:18 | 16 | THE COURT:  Thank you, sir. |
| 14:13:22 | 17 | And for defendant. |
| 14:13:29 | 18 | MR. BEARD:  Thank you, your Honor.  For this |
| 14:13:31 | 19 | argument, we're going to go for three new people.  Ms. |
| 14:13:33 | 20 | Bowland is going to handle it. |
| 14:13:35 | 21 | MS. BOWLAND:  Good afternoon, your Honor. |
| 14:13:37 | 22 | One moment while I try and get the slides up |
| 14:13:40 | 23 | here. |
| 14:13:42 | 24 | THE COURT:  Okay. |
| 14:13:43 | 25 | MS. BOWLAND:  Although, I don't -- there we go. |

14:13:45  1          THE COURT:  Ms. Bowland, which of the offices are

14:13:48  2  you in?

14:13:49  3          MS. BOWLAND:  I'm in the Chicago office, your

14:13:51  4  Honor.

14:13:51  5          THE COURT:  Very good.

14:13:56  6          MS. BOWLAND:  Can you see that, your Honor?

14:14:14  7          THE COURT:  Yes, ma'am.

14:14:15  8          MS. BOWLAND:  Your Honor, as a preliminary matter

14:14:18  9  and I think we already covered this, but all of these

14:14:21  10  arguments are already covered in plaintiff's briefing.  So

14:14:24  11  our response is going to be brief, as well.  It's more

14:14:28  12  complete in the briefing itself.

14:14:30  13          First, looking at claim -- or at slide 16,

14:14:36  14  counsel mentioned In Re: Fought, and in that case, it

14:14:40  15  involved a travel trailer, and the travel trailer portion

14:14:43  16  was included in the preamble.  And the Court found

14:14:47  17  factually that the term "travel trailer" includes inherent

14:14:52  18  structural limitations, including towability and living

14:14:56  19  area, that were not included in the claim body.

14:15:00  20          And I apologize, I don't have a slide for this,

14:15:02  21  your Honor, but that case -- for example, claim one of

14:15:14  22  that case recited, a travel trailer having a first and

14:15:17  23  second compartment therein separated by a wall assembly

14:15:22  24  which is movable so as to alter the relative dimensions of

14:15:23  25  the first and second compartments without altering the

14:15:25  1   exterior appearance of the travel trailer.  So there's

14:15:27  2   nothing in there about towability and there's nothing in

14:15:29  3   there about a living area, in particular.  There's some

14:15:32  4   things about areas, but not about living areas in

14:15:34  5   particular.

14:15:35  6          Our case is different.  We have a very simple

14:15:39  7   preamble, a three-wheeled vehicle, comprising, and those

14:15:43  8   wheels are claimed in the body of the claims themselves.

14:15:48  9   So we go back and look at -- and it appears my slides got

14:15:53  10  a little messed up, your Honor.  I apologize for that.

14:15:56  11  But if we go back and look at claim 10, there's no

14:15:59  12  necessary antecedent basis here.  The three wheels

14:16:02  13  themselves are also -- they're included in the body of the

14:16:05  14  claim.  So there's no need for that.

14:16:07  15         And then, the only other thing left is the

14:16:10  16  vehicle.  But if you take "the" out of the claim and put

14:16:16  17  "a" in, it remains structurally the same vehicle that it

14:16:20  18  was before.  So it's not necessary -- a three-wheeled

14:16:25  19  vehicle does not provide necessary antecedent basis for

14:16:28  20  the body of the claim.  And to sort of pile on that a

14:16:33  21  little bit, Catalina tells us that if you delete the

14:16:39  22  disputed phrase from the preamble and it doesn't affect

14:16:42  23  the structural definition or operation of the invention,

14:16:46  24  then the preamble is not limiting.

14:16:48  25         And here, if you just took out a three-wheeled

14:16:51  1  vehicle entirely, you would still have a chassis that's

14:16:55  2  part of a vehicle, three wheels coupled to that chassis, a

14:16:59  3  transmission, a motor, a battery, all of the things that

14:17:02  4  make up the claimed invention.  So again, the preamble is

14:17:08  5  not limiting because it is -- if you take it out, it

14:17:12  6  doesn't change the structure of the claims.

14:17:16  7          And finally, counsel made an argument that

14:17:25  8  including four-wheeled vehicles in the prior art would be

14:17:29  9  inappropriate, and that's why they are saying that the

14:17:32  10 preamble of claim 10 is limiting.  However, the 255 patent

14:17:37  11 itself tells us that four-wheeled vehicles are part of the

14:17:40  12 prior art.  It says examples in the prior art include and

14:17:45  13 then, goes on to describe such vehicles have three or more

14:17:48  14 wheels.

14:17:48  15         So the 255 patent itself anticipates that similar

14:17:55  16 prior art would include more than three wheels.  And

14:18:00  17 again, I apologize, your Honor, this got a little messed

14:18:02  18 up.  But you can see here, here's two of the patents that

14:18:05  19 are specifically called out by the 255 patent as prior

14:18:10  20 art, and both of them clearly show or describe four wheels

14:18:13  21 of the vehicle.

14:18:14  22         With that, your Honor, I'm happy to answer any

14:18:17  23 questions you may have.

14:18:20  24         THE COURT:  Any response?  Any rebuttal?

14:18:25  25         MR. PALAIYANUR:  Yes, your Honor.

14:18:26   1          I would just like to make a couple of points.

14:18:31   2   The first point, your Honor, is that counsel for Ayro made

14:18:37   3   the point that deletion of the preamble does not change

14:18:40   4   the structure.  We strongly disagree with that, your

14:18:42   5   Honor, because if you delete the preamble, you can go from

14:18:44   6   a vehicle with three wheels to a vehicle with four wheels.

14:18:50   7   Simply claiming in the body the vehicle or three wheels

14:18:55   8   doesn't give you the structure of a three-wheeled vehicle,

14:19:00   9   which is a very particular type of vehicle, your Honor.

14:19:02   10         When I drove my Prius into work today, it has the

14:19:07   11  structure of three wheels and it has the structure of a

14:19:11   12  vehicle, but it does not have the structure of a

14:19:15   13  three-wheeled vehicle, your Honor, which is a vehicle that

14:19:19   14  has exactly three wheels.

14:19:22   15         The second point I want to make, your Honor, is

14:19:24   16  In Re: Fought is not distinguishable.  And in fact, the

14:19:28   17  distinction that counsel for Ayro has made is exactly a

14:19:33   18  distinction that the Court rejected -- the Federal Circuit

14:19:36   19  rejected in In Re: Fought.  The distinction that Ayro

14:19:40   20  wants to make is that a three-wheeled is not -- does not

14:19:45   21  provide structure, and instead, it's simply an intended

14:19:50   22  use.

14:19:51   23         Actually, in In Re: Fought, the Court found that

14:19:53   24  the vehicle was a particular type of vehicle.  Just in our

14:19:57   25  case, a three-wheeled vehicle is a particular type of

14:19:59   1   vehicle, and it's not a statement of intended use.  So

14:20:04   2   that distinction has already been rejected by the Federal

14:20:06   3   Circuit.

14:20:08   4          And the last point I want to make is that counsel

14:20:11   5   for Ayro brought up a section of the patent that talked

14:20:16   6   about three or more vehicles being prior art to the 255

14:20:22   7   patent.  That passage says nothing about the structure of

14:20:26   8   a three-wheeled vehicle, and that's why we think it's

14:20:29   9   inappropriate to bring in prior art with four wheels to

14:20:33   10  meet the three-wheeled structure, your Honor.  That's all.

14:20:38   11         THE COURT:  Anything else?

14:20:41   12         MS. BOWLAND:  Your Honor, just one point of

14:20:43   13  clarification.

14:20:43   14         If I said that the structure was the same here in

14:20:46   15  the preamble, then I misspoke.  What I meant was that if

14:20:48   16  you remove the preamble, you still have a structurally

14:20:51   17  complete device, which is what is the test in Catalina,

14:20:56   18  not that it's the exact same vehicle.

14:20:58   19         THE COURT:  And that's the way I took what you

14:21:00   20  said.  So anything else?

14:21:04   21         MS. BOWLAND:  Not from me, your Honor.

14:21:06   22         THE COURT:  Okay.  I'll be back in just a minute

14:21:07   23  or two.

14:21:10   24         MR. PALAIYANUR:  Thank you, your Honor.

14:26:29   25         THE COURT:  If we could go back on the record,

| 14:26:31 | 1 | please. |

14:26:43   2        The Court is going to find that the preamble is

14:26:47   3  limiting, but only with respect to the word "vehicle" and

14:26:53   4  not to the claim "a three-wheeled vehicle."  I find that

14:26:59   5  the -- there's an element within the -- relevant claims

14:27:05   6  that discloses the concept of the name "three wheel," but

14:27:10   7  I do believe it has -- it must be limiting with respect to

14:27:13   8  that the claimed invention is a vehicle comprising.  So

14:27:17   9  that will be my construction.

14:27:20  10        Is there -- let me ask you this, Mr. Villarreal,

14:27:23  11  or, Mr. Beard:  Have we set a trial in this case?

14:27:28  12        MR. VILLARREAL:  I don't think so, your Honor.

14:27:29  13  We have not.

14:27:29  14        THE COURT:  Okay.  Give me -- yes.

14:27:34  15        MR. BEARD:  I was going to say, I think that's

14:27:36  16  correct, your Honor.

14:27:37  17        THE COURT:  Give me one second.  Is there just

14:27:38  18  this one patent in the case?

14:27:42  19        MR. VILLARREAL:  Yes, your Honor.

14:27:42  20        MR. BEARD:  Yes, your Honor.

14:27:42  21        THE COURT:  Okay.  Give me one -- I'll be right

14:27:46  22  -- again, I'll be right back.  I have to check with Josh

14:27:48  23  and see what our schedule is.

14:29:56  24        We're back on the record.  I can't tell by the

14:29:58  25  names of the parties, are either of the companies foreign

14:30:02  1   companies?  And what I mean by that is, would there be

14:30:05  2   discovery that had to take place outside of the United

14:30:08  3   States?

14:30:10  4          MR. VILLARREAL:  Your Honor, not as far as we

14:30:11  5   know.  Arcimoto is an Oregon company, and we're not aware

14:30:15  6   of any discovery that's foreign.

14:30:17  7          THE COURT:  For some reason, Arcimoto sounded

14:30:19  8   Japanese to me.  I thought you might have to go do

14:30:21  9   discovery in Asia.  So -- and do either of you perceive

14:30:28  10  that you're going to have a difficult time with discovery,

14:30:32  11  because of the COVID situation, in terms of getting the

14:30:36  12  initial discovery done?

14:30:40  13         MR. VILLARREAL:  I don't anticipate so, your

14:30:42  14  Honor.

14:30:42  15         THE COURT:  Mr. Beard?

14:30:44  16         MR. BEARD:  Your Honor, it's hard for me to say,

14:30:46  17  to really be honest with you.  I have some colleagues that

14:30:50  18  have done depositions and it's been cumbersome to get

14:30:52  19  those.  That's one thing I think is really difficult for

14:30:56  20  the parties to do.  But I can't really say one way or

14:30:59  21  another, and I haven't really gotten into discovery at

14:31:02  22  this level on any case during COVID.

14:31:04  23         THE COURT:  Here's what I'm going to do.  I'm

14:31:07  24  going to set this for July 19th.  I realize that's a

14:31:12  25  relatively short time period.  And so, if one or the other

14:31:16  1  of you -- I don't mean to use a pun -- discovers that
14:31:24  2  you're unable to get discovery done because of the
14:31:29  3  restrictions that we have, I mean, there are people who
14:31:31  4  can't travel, or y'all can't travel, or if there's some
14:31:36  5  issue that is going to make it hard on one or the other or
14:31:40  6  both parties to get discovery done, let me know as soon as
14:31:45  7  you realize that's a problem, and I'll work on adjusting
14:31:49  8  the trial schedule at that time.
14:31:51  9      It seems to, me, with this particular patent, in
14:31:54  10  normal times, this would be enough time to get to trial.
14:31:57  11  But if there's an issue I'm not aware of that you come
14:32:02  12  across, you can let us know.
14:32:06  13      MR. VILLARREAL:  Your Honor, if I may.
14:32:07  14      THE COURT:  Yes, sir.
14:32:08  15      MR. VILLARREAL:  Your Honor, the scheduling order
14:32:12  16  has already a series of dates going through August and
14:32:15  17  September.  The motions in limine date is September 16th,
14:32:23  18  2021, so we're going to have to reconcile that.
14:32:28  19      THE COURT:  Yeah.  What y'all will need to do is
14:32:30  20  just take that July 19th date and get together and figure
14:32:34  21  out how to get everything done by then.
14:32:38  22      MR. VILLARREAL:  And, your Honor, my colleague is
14:32:41  23  going to be part of the trial team.  I just want to confer
14:32:44  24  with Ms. Rothauge that she has no conflicts with that
14:32:48  25  date.

| | | |
|---|---|---|
| 14:32:48 | 1 | THE COURT:  Absolutely.  Everyone, if you have a |
| 14:32:51 | 2 | conflict, if you're in someone else's court already on |
| 14:32:53 | 3 | that date or the week before, whatever, let me know now, |
| 14:32:55 | 4 | and I'll be happy to adjust it now. |
| 14:33:01 | 5 | MS. ROTHAUGE:  This is Renee Rothauge and I do |
| 14:33:02 | 6 | not have any conflict on that day.  Thank you. |
| 14:33:04 | 7 | THE COURT:  Mr. Beard, do you have any conflicts |
| 14:33:06 | 8 | on that date? |
| 14:33:07 | 9 | MR. BEARD:  I don't know of any right now, your |
| 14:33:10 | 10 | Honor, but I would have to look at our schedule.  I just |
| 14:33:13 | 11 | don't have that in front of me right now.  And we'll look |
| 14:33:15 | 12 | at it and if we have an issue, we'll get to you. |
| 14:33:17 | 13 | THE COURT:  Very good.  And what I mean a |
| 14:33:19 | 14 | legitimate issue is, if you're set for trial on the 19th, |
| 14:33:23 | 15 | or the week before, or something, where I want to |
| 14:33:26 | 16 | certainly be respectful of that type of issue for -- |
| 14:33:30 | 17 | especially for lead counsel. |
| 14:33:32 | 18 | Is there anything else that we need to take up? |
| 14:33:35 | 19 | MR. VILLARREAL:  Your Honor. |
| 14:33:36 | 20 | THE COURT:  Yes. |
| 14:33:37 | 21 | MR. VILLARREAL:  This is Mr. Villarreal. |
| 14:33:38 | 22 | Just one thing, your Honor, just to have the |
| 14:33:40 | 23 | record reflect that Arcimoto preserves its constructions |
| 14:33:46 | 24 | as briefed for appeal, including its alternative |
| 14:33:48 | 25 | construction for "floor deck" as a floor level surface, |

14:33:52  1  which was included in part of the briefings.  Thank you,

14:33:55  2  your Honor.

14:33:55  3          THE COURT:  And thank you for making sure that

14:33:56  4  was on the record.  I should have done that.  I certainly

14:33:59  5  want everyone to protect their record.

14:34:02  6          Anything from you, Mr. Beard?

14:34:04  7          MR. BEARD:  Yes, sir.  We have the same

14:34:05  8  reservation with respect to our constructions.  And I did

14:34:09  9  have a question for you.

14:34:11  10          THE COURT:  Sure.

14:34:11  11          MR. BEARD:  Your construction of "floor deck" was

14:34:14  12  the plain and ordinary meaning.  So we take that to mean

14:34:17  13  that you are construing that floor deck to be the floor

14:34:20  14  deck.

14:34:25  15          THE COURT:  Correct.

14:34:27  16          MR. BEARD:  Okay.  Good.

14:34:30  17          And then, the other question we had, your Honor,

14:34:32  18  just to get some color on what we think should --

14:34:34  19          THE COURT:  Well, Mr. Beard, let me interrupt

14:34:37  20  you.  The same thing, though, applies to floor deck as

14:34:43  21  applies to motor.  If when you exchange -- when the

14:34:48  22  plaintiff gives you their infringement report from its

14:34:51  23  expert or when -- Mr. Villarreal, when Mr. Beard gives you

14:34:54  24  the invalidity report from his expert, if what you see is

14:35:00  25  that there is a fight over whether or not the other side

14:35:06  1   has appropriately used the plain and ordinary meaning of

14:35:10  2   floor deck, then you need to immediately let me know.

14:35:16  3           MR. BEARD:  Yes, your Honor.

14:35:17  4           THE COURT:  I don't want -- I just had a trial

14:35:19  5   where they were cross-examining experts about the correct

14:35:23  6   meaning of one of the claim terms.  Even though it had a

14:35:26  7   plain and ordinary meaning and even though the parties had

14:35:28  8   agreed as to what the plain and ordinary meaning was, we

14:35:32  9   still had a lot of fighting over what it was.

14:35:36  10          So if in any of these claim terms, either of you

14:35:40  11  believe that the other side has used an incorrect -- that

14:35:48  12  what they're saying the plain and ordinary meaning of any

14:35:50  13  of these terms is floor deck, or any of the others, that's

14:35:54  14  the time to raise it with me, and I'll take it up right

14:35:56  15  then.  I'm not going to take it up at trial.

14:36:00  16          MR. BEARD:  Yes, your Honor.  And we're going to

14:36:01  17  probably file a motion for summary judgment on that issue.

14:36:03  18  So I'm sure this will come up well before trial.

14:36:06  19          THE COURT:  Okay.

14:36:07  20          MR. BEARD:  And then, the other question we had

14:36:09  21  was just are you going to issue an order that will go

14:36:12  22  through the Court's analysis reaching these claim

14:36:14  23  constructions?  Or will it be a more short form where you

14:36:18  24  just have a kind of a chart you had in your preliminary

14:36:22  25  analysis and say, this is my claim construction?

14:36:24  1          THE COURT:  Yes.  We're going to do both.  You're

14:36:26  2  going to have this order, and then, usually we get out

14:36:29  3  within about a month, a more robust order setting out the

14:36:33  4  claims -- setting out the reasons for the -- that won't be

14:36:38  5  out for about a month, but we do the full -- we will do a

14:36:41  6  full order for you.

14:36:44  7          MR. BEARD:  Great.  Thank you, your Honor.

14:36:45  8  That's all I have.

14:36:45  9          THE COURT:  No.  That's a good question.

14:36:47  10          The purpose of getting this done is that so that

14:36:49  11  you guys can start discovery now, knowing what the claim

14:36:52  12  terms -- how they've been construed.  But we'll get you

14:36:56  13  that order as soon as we can.

14:36:59  14          Anything else?

14:37:00  15          MR. VILLARREAL:  Yes, your Honor.  As to

14:37:02  16  discovery, when is it considered officially open?

14:37:05  17          THE COURT:  At 2:38 p.m. central time on October

14:37:12  18  14th.

14:37:16  19          MR. VILLARREAL:  Thank you, your Honor.

14:37:18  20          THE COURT:  The stay is lifted.

14:37:21  21          Anything else?

14:37:24  22          MR. BEARD:  No, your Honor.

14:37:24  23          THE COURT:  Okay.  You all be safe out there.  I

14:37:26  24  hope to see at least some of you in person soon.  Take

14:37:29  25  care.

14:37:31   1                    MR. BEARD:  Thank you, your Honor.

14:37:32   2                    MR. VILLARREAL:  Thank you, Judge Albright.

14:37:33   3                    THE COURT:  Thank you.

           4                    (Proceedings concluded.)

           5

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                          *   *   *   *   *   *

2

3

4   UNITED STATES DISTRICT COURT  )

5   WESTERN DISTRICT OF TEXAS)

6

7      I, LILY I. REZNIK, Certified Realtime Reporter,

8   Registered Merit Reporter, in my capacity as Official

9   Court Reporter of the United States District Court,

10  Western District of Texas, do certify that the foregoing

11  is a correct transcript from the record of proceedings in

12  the above-entitled matter.

13     I certify that the transcript fees and format comply

14  with those prescribed by the Court and Judicial Conference

15  of the United States.

16     WITNESS MY OFFICIAL HAND this the 26th day of October,

17  2020.

18

19

20                              */s/Lily I. Reznik*
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                SOT Certification No. 4481
25                              Expires:  1-31-21

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*